IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

TOMMY AMBUS,                               )
                                           )
                    Plaintiff,             )
                                           )
v.                                         )
                                           )        Civil Action No. 3:12cv972-WHA
AUTOZONERS, LLC,                           )
                                           )                (wo)
                    Defendant.             )

**MEMORANDUM OPINION AND ORDER**

**I.  INTRODUCTION**

This cause is before the court on a Partial Motion to Dismiss Amended Complaint (Doc. #29), filed by the Defendant, Autozoners, LLC.

The Plaintiff, Tommy Ambus, filed a Complaint in this case on November 2, 2012.   On January 29, 2013, the Plaintiff filed an Amended Complaint which includes the following under "Causes of Action":  "A. Race Discrimination in Violation of 42 U.S.C., Section 2000(e), et seq.; 42 U.S.C. 1981a," "B. Count III: Retaliation in Violation of 42 U.S.C., Section 2000(e), et seq.; 42 U.S.C. §1981a," and "C.  Count III: Hostile Working Environment Discrimination in violation of 42 U.S.C., Section 2000(e), et seq.; 42 U.S.C. 1981a."[1]

The Defendant filed a Partial Motion to Dismiss Amended Complaint, in response to which the Plaintiff filed a brief and multiple attachments.  The Defendant replied to the Plaintiff's arguments and, in doing so, raised a new argument, as to which the court gave the

---

[1]  Although the claims are alleged to be asserted pursuant to 42 U.S.C. § 2000(e) and 42 U.S.C. § 1981a, and § 1981a is a remedy provision of Title VII, Ambus also identified 42 U.S.C. § 1981 as a basis for the claims in paragraph one of his Amended Complaint.  Autozoners has moved to dismiss as to claims asserted under both statutes.  Therefore, the court construes the Amended Complaint to assert claims under Title VII and 42 U.S.C. §1981(a).

Plaintiff additional time to respond.   The Defendant also urged the court not to consider most of the attachments to the Plaintiff's brief, because the case is pending on a Rule 12(b)(6) Motion.[2]

For reasons to be discussed, the Partial Motion to Dismiss Amended Complaint is due to be GRANTED in part and DENIED in part.

## II.   MOTION TO DISMISS

The court accepts the plaintiff's factual allegations as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), and construes the complaint in the plaintiff's favor, *Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993).   In analyzing the sufficiency of pleading, the court is guided by a two-prong approach: one, the court is not bound to accept conclusory statements of the elements of a cause of action and, two, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to entitlement to relief.  *See  Ashcroft v. Iqbal,* 556 U.S. 662*,* 678-79 (2009).   "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."   *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).   To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but instead the complaint must contain "only enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.   The factual allegations  "must be enough to raise a right to relief above the speculative level."  *Id.* at 555.

## III.   FACTS

The allegations of the Plaintiff's Amended Complaint are as follows:

---

[2] The court has only considered submissions properly considered in the context of a Motion to Dismiss, including those relevant to an exhaustion of remedies issue.

The Plaintiff, Tommy Ambus ("Ambus"), is an African-American man who was hired by Autozoners in 2004.  In the Amended Complaint, Ambus identifies a series of employment actions upon which he bases his claims in this case, beginning in January 2008.  In January 2008, Ambus applied for a vacant Hub Coordinator position, which he was denied, and a white female, Elizabeth Corbett ("Corbett"), was given the position.  At that time, District Manager Keith Linson told Ambus that he did not look the part because he had a dread locks hairstyle.

In October 2010, Ambus had an accident with a company vehicle, and subsequently was suspended from driving for ten months.  In February 2011, he and was removed from the Hub Department.  Ambus alleges that a white employee was in an accident in February 2011, and only suspended for one month and stayed in the hub department, and other white employees in accidents were suspended for a month or two.

On March 23, 2011, Corbett shoved Ambus.  Ambus reported this incident, but nothing was done in response to his complaint.

In April 2011, Ambus's hours were decreased from full-time to 34 hours for two months.

Ambus alleges that he filed a complaint with the Human Resources Department in April 2011.  On July 16, 2011, Ambus sent an unverified Intake Questionnaire to the Equal Employment Opportunity Commission ("EEOC").  Ambus mailed a charge of discrimination to the EEOC which was received on September 14, 2011.

Ambus has alleged acts of retaliation by Corbett which occurred after he filed his EEOC charge.  He also states that Corbett made comments about him being a thief and a drug dealer.  Ambus further alleges that he complained to General Manager Jorge Davila ("Davila") about his decrease in hours.   He alleges that Davila used profanity in saying that Ambus did not deserve a

manager position, called Ambus a thief, and told other employees not to talk to Ambus.

In May 2012, Alan Tidwell ("Tidwell"), a white male employee was promoted over Ambus to the Assistant Manager position.

In July 2012, Ambus asked for FMLA leave, and was taken off the schedule for an entire week by Davila, and then was scheduled for only 32 hours of work the following week, although he was a full-time employee.

In October 2012, a white male named Johnny Wade was promoted over Ambus to the position of Assistant Manager after Tidwell was promoted to Store Manager.

Ambus filed a second EEOC charge on December 11, 2012.  He received a Notice of Rights letter and filed a Complaint.  After he received a second Notice of Rights in January 2013, he filed his Amended Complaint.

## IV.  DISCUSSION

Autozoners raises several grounds for dismissal of the claims in the Amended Complaint, including failure to exhaust administrative remedies for Title VII claims, violation of the statute of limitations for § 1981 claims, and failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

### A.  Exhaustion of Title VII Remedies

Charges regarding alleged discriminatory acts must be filed with the EEOC within 180 days of the alleged act. 42 U.S.C. § 2000e-5(e)(1).  There is no dispute that Ambus filed EEOC charges, but Autozoners contends that not all of the claims in the judicial Amended Complaint were included in the EEOC charges.

#### 1. Hostile Environment/Racial Harassment Claim

Autozoners has argued that because Ambus did not mark on his First or Second EEOC charge that he was complaining about a "Continuing Action," and the narrative section of the charges does not state allegations reflecting a hostile work environment, Ambus did not administratively exhaust the claim pled in his judicial Amended Complaint for racial harassment/hostile work environment.

Ambus acknowledges that he did not use the words "hostile work environment" in his charge forms, but he argues that he identified conduct occurring on more than one occasion, and that in a July 16, 2012 letter to the EEOC, he specifically referred to a hostile environment and to harassment. Ambus further points out that even if he did not properly exhaust his Title VII hostile environment claim, there is no exhaustion requirement for a claim brought pursuant to 42 U.S.C. § 1981.

A plaintiff's complaint is "limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Gregory v. Georgia Dept. of Human Resources*, 355 F.3d 1277, 1280 (11th Cir. 2004) (internal citation omitted). Nevertheless, courts must be "extremely reluctant to allow procedural technicalities to bar claims brought under [Title VII]." *Id.*

In evaluating the scope of the EEOC charge within the context of this Rule 12(b)(6) motion, this court will consider the July 2012 letter pointed to by Ambus in evaluating the exhaustion arguments. *See Patterson v. WMW, Inc.*, No. 1:11cv3172-WSD-SSC, 2012 WL 3261290 at *4 (N.D. Ga. June 15, 2012) (considering documents attached to plaintiff's response). Ambus's July 2012 letter to the EEOC (Doc. #32-3) is not itself a charge because it was not verified, and there was no effort made to amend it to include a verification. *See Vason v. City of*

5

*Montgomery, Ala.*, 240 F.3d 905, 907 (11th Cir.2001) (per curiam).  The EEOC regulations set out the requirements for a charge of discrimination.  *See* 29 CFR § 1601.12.  Under the regulation, a charge may be amended "to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein." 29 C.F.R. § 1601.12(b). Ambus has stated in his brief that he did not amend his EEOC Charge, but merely provided additional information in his July 16, 2012 letter.  The court will not, therefore, consider this July 2012 letter as a charge.  Ambus also has argued, however, that the hostile environment claim is one which would have been investigated by the EEOC, because he provided information to the EEOC in his July 2012 letter.

The Eleventh Circuit has provided some guidance in this area, albeit through an unpublished opinion.  In *Green v. Elixir Indu., Inc.*, 152 F. App'x 838 (11th Cir. 2005), a plaintiff alleged termination and a hostile environment in a judicial complaint, but only identified facts regarding his termination in his EEOC charge, including the date of his termination as the earliest and latest date of discriminatory conduct.  *Id.* at 841.   The court specifically noted that plaintiff argued on appeal that he told the EEOC investigator about harassing conduct and provided paperwork to the EEOC concerning that claim.  The court then noted that the hostile environment claim had not been exhausted, that "there is no dispute concerning Green's EEOC form, which did not include facts concerning his hostile-environment claim."  *Id.* at 840 n.2.  The court concluded that the *Gregory* analysis of the scope of the investigation did not apply, and that the hostile environment claim had not been exhausted based on the facts as stated in the EEOC charge form.  *Id.* at 841.  It appears to this court, therefore, that it should not consider the content of the separate letter in evaluating whether the EEOC charges were adequate to exhaust the

6

hostile environment claim.  This is consistent with the practice of other courts which have reasoned that letters sent to the EEOC cannot constructively amend a formal charge.  *See Sloop v. Mem. Mission Hosp., Inc.*, 198 F.3d 147, 149 (4th Cir. 1999); *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 83 (2d Cir. 2001) (addressing an unsworn letter mailed to the EEOC more than a year after the initial EEOC charge was filed).  As the Fourth Circuit explained, "it would be objectively illogical to view a private letter from a complaining party to the EEOC as constructively amending a formal charge, given that one of the purposes of requiring a party to file charges with the EEOC is to put the charged party on notice of the claims raised against it." *Sloop*, 198 F.3d at 149.  Instead, this court must examine whether the claims could reasonably be expected to arise during the course of the EEOC investigation based on that which is stated in the verified EEOC charges themselves.  *See Sanchez*, 431 F.2d at 466.

Even without considering the July 2012 letter to determine the scope of Ambus's charged claims, the EEOC charges filed by Ambus, unlike those in *Green*, identify conduct occurring on more than one date.  This is not, therefore, a case in which a plaintiff seeks to assert a hostile environment claim after only having identified a discrete employment action.  The EEOC charges reference a comment by the District Manager that Ambus was told he did not look the part of a manager, that his hair needs to be cut to be taken seriously, that Ambus was shoved by his supervisor Corbett, and that he was treated differently from a white employee after he had an accident, that two white employees received promotions over him, that he has been given low raises, was taken off the schedule, and was denied training that was given to white employees.[3]

---

[3] This court also notes that the Notice of Charge of Discrimination provided by the EEOC to Autozoners states that race discrimination had been alleged in "assignment, terms/conditions" during a period of time. (Doc. #32-2).

The court concludes that a claim of racial harassment could reasonably have been expected to grow out of the charges of racial discrimination, and the Motion to Dismiss based on failure to exhaust is due to be DENIED as to the hostile environment claim under Title VII.   (Doc. #30-1, 30-2).  Of course, the racial harassment claim asserted pursuant to § 1981 is not subject to the exhaustion requirement.  *See Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 461 (1975).

### 2.  Exhaustion of Claims Based on Discrete Acts

The employment actions asserted in the Amended Complaint identified by Ambus as forming the basis of Title VII claims are failures to promote in January 2008, July 2012, and October 2012; disparate discipline in October 2010 through a reduction of hours; subsequent reduction of hours; being removed from the Hub Department in February 2011; being taken off the schedule for a week; another reduction of hours; being written up by Corbett; and a hostile working environment.  Ambus has also identified comments and other actions by various management officials which appear to be alleged as part of a hostile working environment, but which Autozoners has moved to dismiss as untimely disparate treatment and retaliation claims.

Autozoners concedes that the following Title VII claims were timely included in the EEOC charges:  claims based on a March 2011 incident when Corbett pushed Ambus, failure to promote Ambus to positions in July 2012 and October 2012, Ambus being taken off the schedule, and Ambus being scheduled for fewer hours.  (Doc. #30 at p.12).

Autozoners argues that because Ambus filed his charge of discrimination on September 14, 2011 and his second charge on December 11, 2012, claims arising from actions that took place more than 180 days prior to the first charge, that is, before March 18, 2011, and claims

based on acts occurring after the first charge and more than 180 days before the second, should be dismissed for failure to exhaust administrative remedies.  The court examines each of these in turn.

### a. Claims based on actions taken prior to March 18, 2011

Autozoners specifically identifies allegations in the Amended Complaint of a denial of promotion in January 2008, and disparate discipline in October 2010, as occurring prior to March 18, 2011.

Ambus advances an argument that his 180 days should be counted from the date the EEOC received his Intake Questionnaire, which is July 25, 2011, rather than the date of his EEOC charge, but even by that calculation, the 180 day period prior to the questionnaire began January 26, 2011, and so would not save Title VII disparate treatment claims arising before that date, specifically action taken in January 2008 or October 2010.

Ambus also argues that he can rely on evidence of time-barred events as background evidence, a pattern and practice, and as evidence of hostile work environment discrimination. Accepting that Ambus could present otherwise time-barred evidence for at least some of the purposes identified, that would not be the basis for separate disparate treatment claims as to that evidence, and so the Motion to Dismiss is due to be GRANTED as to Title VII claims based on the denial of position in January 2008 and disparate discipline in October 2010.

The court notes that the claim based on the discipline for Ambus's accident involves two dates.  As alleged in the Amended Complaint, Ambus was not allowed to drive for 10 months in October 2010 as a result of his accident, but in February of 2011, he also was removed from the Hub Department, while a white employee named Travis Cummings was allowed to work in the

Hub Department.  If the Intake Questionnaire is in fact an EEOC charge, the disparate discipline claim based on actions taken in February 2011 is within 180 days prior to the July 25, 2011 questionnaire.

In the Eleventh Circuit, an intake questionnaire is not treated as an EEOC charge if the plaintiff does not manifest an intent to activate the administrative process with the filing of the intake questionnaire.  *See Bost v. Fed. Express Corp.*, 372 F.3d 1233, 1241 (11th Cir. 2004).  Ambus has pointed to a Notice of Charge issued to Autozoners by the EEOC on August 1, 2011 as evidence that the questionnaire was a charge, while Autozoners points out that the Intake Questionnaire was not sworn to by Ambus.

A charge is verified when it is "sworn to or affirmed before a notary public, designated representative of the Commission, or other person duly authorized by law to administer oaths and take acknowledgments, or supported by an unsworn declaration in writing under penalty of perjury." 29 C.F.R. § 1601.3(a); *see also Vason*, 240 F.3d at 907.   The Eleventh Circuit places significance on whether the intake questionnaire is verified in determining whether it should be considered a charge.  *See Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1320 (11th Cir. 2001).  Because Ambus's Intake Questionnaire was not verified, and he did subsequently file a separate charge, this court concludes that the Intake Questionnaire does not serve as a charge in this case.  *See Francois v. Miami Dade County, Port of Miami*, 432 F. App'x 819, 822 (11th Cir. 2011) (holding that questionnaire does not serve as a charge where it was not verified and a separate charge was filed).  As to the Title VII disparate discipline claim based on actions taken in February 2011, which occurred more than 180 days prior to the first EEOC charge, therefore, administrative remedies were not exhausted, and the claim is also due to be dismissed.

10

b.  Claims arising after September 14, 2011 and prior to June 14, 2012

As stated earlier, Autozoners also contends that claims based on acts occurring after September 14, 2011, the date of the first EEOC charge, and before June 14, 2012, which is 180 days before the second charge, should be dismissed for failure to exhaust administrative remedies.  Autozoners points to allegations by Ambus in paragraphs 25-28 of the Amended Complaint that Corbett made comments about Ambus and wrote up his behavior, that Davila made comments about Ambus, and also allegations in paragraphs 22-24 that Ambus's hours were reduced after he filed his first EEOC charge.  Autozoners contends that these claims were not exhausted because Ambus never amended his first charge to include them, and his second charge was filed too late for those claims to be exhausted.

Ambus points out that he refers to Corbett and Davila's conduct in the letter he wrote to the EEOC in July of 2012.  Ambus argues that the additional information provided in his July letter was information investigated by the EEOC.  As discussed above, however, the Eleventh Circuit's decision in *Green*, consistent with the practice of other courts, cautions against consideration of information provided to the EEOC, which would not itself constitute a charge, as evidence of what would reasonably be expected to grow out of an investigation of the charges. Therefore, the court concludes that the disparate treatment race claims based on Corbett's comments and write-ups, Davila's comments, and hours reduced after the first EEOC charge but before June 14, 2012 are barred as not having been administratively exhausted.

With respect to the retaliation claims, however, the analysis of claims which would reasonably be expected to grow out of an investigation of the EEOC charges is slightly different. Ambus points to precedent that a plaintiff is not required to file an EEOC charge to preserve his

11

ability to litigate a retaliation claim when the retaliation claim is based on actions taken afer the

initial EEOC charge is filed.  *See Houston v. Army Fleet Serv., L.L.C.*, 509 F. Supp. 2d 1033,

1043 (M.D. Ala. 2007) (citing *Baker v. Buckeye Cellulose Corp.*, 856 F.2d 167, 169 (11th Cir.

1988)).  Under the law in this circuit, only one charge is necessary because "[r]equiring prior

resort to the EEOC would mean that two charges would have to be filed in a retaliation case-a

double filing that would serve no purpose except to create additional procedural technicalities

when a single filing would comply with the intent of Title VII."  *Baker*, 856 F.2d at 169 (citation

and quotation omitted).

Autozoners points out that in the *Houston* case, however, a retaliation claim was not

exhausted because it was not included in the EEOC charge.  *See Houston*, 509 F. Supp. 2d at

1045.  The difference between the instant case and the *Houston* case, however, is that the

retaliation in *Houston*, which should have been part of the initial EEOC charge, was alleged

retaliation for a letter of complaint, not the EEOC charge itself.  *Id.* at 1044.  In this case, Ambus

filed an EEOC charge, alleged retaliation occurred for an extended period, and then he filed a

second EEOC charge.  Had he never filed the second EEOC charge, Eleventh Circuit law would

have held that his retaliation claims arising after the first charge would have grown out of the

investigation of the first charge, *see Baker*, 856 F.2d at 169, so this court cannot conclude that the

additional charge, which Autozoners contends was too late to exhaust some of those claims,

alters the application of Eleventh Circuit law.   Therefore, the Motion to Dismiss is due to be

GRANTED only as to Title VII disparate treatment race claims based on Corbett's comments

12

and having written up Ambus, Davila's comments,[4] and a reduction of hours after the first

EEOC charge, but before June 14, 2012, and is due to be DENIED as to retaliation claims based

on those facts.

### B.  Statute of Limitations

The initial Complaint in this case was filed on November 2, 2012.   Autozoners moves to

dismiss claims brought under 42 U.S.C. § 1981 pursuant to a two-year statute of limitations.  The

statute of limitations for § 1981 claims must be analyzed in terms of the provisions which Ambus

seeks to enforce, however, because some § 1981 claims have a four-year statute of limitations.

Prior to the enactment of 28 U.S.C. § 1658(a) in 1990, federal courts were required to

apply the analogous state statute of limitations to § 1981 claims. *See Goodman v. Lukens Steel

Co.*, 482 U.S. 656, 660–61 (1987) (superseded by statute as stated in *Jones v. R.R. Donnelley &

Sons Co.*, 541 U.S. 369 (2004)).  This meant that until Section 1658(a) of Title 18 was enacted,

all § 1981 claims brought in Alabama had a two-year statute of limitations.  *See, e.g., Lane v.

Ogden Entertainment, Inc.*, 13 F. Supp. 2d 1261, 1270 (M.D. Ala. 1998).  The Supreme Court

held in *Jones* that a claim is governed by § 1658's four–year statute of limitation "if the plaintiff's

claim against the defendant was made possible by a post–1990 enactment."  *Jones*, 41 U.S. at

382.  Through the Civil Rights Act of 1991, Congress amended § 1981 to include new causes of

action.  *Id.* at 372.  Those new claims, therefore, have a four-year statute of limitations.  *Id.*

Ambus's January 2008 failure to promote claim is governed by the two-year statute of

limitations, because failure to promote was cognizable as a claim under § 1981 prior to 1991 if

---

[4] Of course, § 1981 claims do not require exhaustion, and even non-exhausted claims may
be proven as part of hostile environment.

13

the position would have created a new relationship between the employer and the employee.  *See*

*McCray v. Wal-Mart Stores, Inc.*, No. 1:06cv1123-MEF, 2009 WL 734138 (M.D. Ala. March 17,

2009), *aff'd*, 377 F. App'x 921 (11th Cir. 2010); *Price v. M & H Valve Co.*, 177 F. App'x 1, 7

(11th Cir. 2006).  Ambus alleges that Corbett was promoted to Hub Coordinator, and Ambus

does not argue that the claim should not be barred.  (Doc. #32-1 at p.20).  Therefore, that claim is

due to be dismissed.  *See Hithon v. Tyson Foods, Inc.,* 144 F. App'x 795, 799 (11th Cir. 2005)

(applying two year statute of limitations to claim for failure to promote to a manager position).

As to the October 2010/February 2011 difference in discipline claim, that claim is

governed by the four-year statute of limitations because it is a newly-recognized § 1981 claim

based on the "benefits, privileges, terms, and conditions of the contractual relationship," 42

U.S.C. § 1981(b).  *See McCray*, 2009 WL 734138 at * 9 (finding that discipline claims are

governed by the four-year statute).  The Complaint was filed in November 2012, and the alleged

disparate discipline occurred in October 2010/February 2011, so the difference in discipline

claim is not time-barred.

The other § 1981 claims asserted in this case are timely, and not due to be dismissed on

that basis.

### 3.  Failure to State a Claim

#### a.  Disparate Treatment

Autozoners argues that the allegations of disparate treatment which were exhausted or

timely pled do not sufficiently state a claim for disparate treatment under Title VII or § 1981

because they are no more than formulaic recitations of the elements of the claims.

As to the failure to promote claims, Autozoners argues that Ambus has only alleged that

he had more recent experience than comparators Tidwell and Wade, but has failed to allege that the experience he had was relevant experience.   At this point in the proceedings, however, the duties of the job have not been established with evidence, so that Ambus's allegation that he had more recent experience is sufficient.  Autozoners also argues that Ambus does not allege that he applied for the position given to Wade.   The Amended Complaint states that Ambus applied for the Assistant Manager position which was given to Tidwell.  Then, Tidwell was promoted to Store Manager and Wade was promoted over Ambus to the position of Assistant Manager.  The Amended Complaint could, therefore, be read to say that Ambus applied for the position, or should have been considered.  Therefore, the court concludes that the Motion to Dismiss is due to be DENIED as to timely and exhausted claims for failure to promote in May and July of 2012.

As to the disparate treatment in discipline claim that Corbett was not disciplined for shoving Ambus, but Ambus was disciplined for having an accident with a company vehicle, the court agrees that these allegations do not state a disparate treatment claim because disparate treatment in discipline requires a showing of similarity that cannot be met even if facts were proven consistent with what has been alleged.  *See Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999) (stating that the "quantity and quality of the comparator's misconduct be nearly identical.").   The disparate discipline of Ambus and other drivers also involved in accidents is, however, not due to be dismissed at this time, as the comparators are alleged to have committed similar infractions.  These facts do not state a retaliation claim, however, because Ambus was prevented from driving before he complained about Corbett's actions*. See, e.g., Schechter v. Georgia State Univ.*, 341 F. App'x. 560, 563 (11th Cir.2009) (no causal connection where adverse employment action occurred before protected activity).  Therefore, Ambus will only

15

proceed on § 1981 claims for disparate discipline on the basis of race based on different treatment of employees involved in accidents.

Autozoners also argues that the claim that Ambus's hours were reduced does not allege that Ambus was entitled to or qualified to work a certain number of hours, and that Ambus admits he was involved in an accident, which would require his hours to be reduced.  The accident is not the only basis for hours reduction which Ambus has alleged, however.  For example, in ¶ 19 of the Amended Complaint, he alleges that in April of 2011, his hours were decreased from full-time to 34 hours per week for two months after he complained that Corbett pushed him at work,[5] and in ¶ 31 he states that his hours were reduced after he took leave in July 2012.  The court cannot conclude, therefore, that the Motion to Dismiss is due to be granted as to a reduction in hours claim on the basis that some reduction of hours is attributed to the accident. Ambus can proceed on his properly exhausted Title VII, and timely § 1981, reduction in hours claims.

Autozoners also contends that allegations that Ambus was taken off the schedule for a week when he requested FMLA leave is a formulaic recitation of elements, and that Ambus himself requested FMLA leave, so that is not an adverse employment action.  Ambus has alleged, however, and argued in brief, that he requested leave for less than a week, but was taken off the schedule for the entire week.  (Doc. #27 at ¶ 30).  The court concludes that the Motion to Dismiss is not due to be granted on that basis as to the removal from schedule claim.

Finally, Autozoners has argued that comments by Corbett and Davila did not evidence racial bias, and therefore do not show that any employment actions were taken on the basis of

---

[5] This reduction of hours was included in the first EEOC charge (Doc. #30-1).

race. Whether the comments are race-based is an issue which will have to be evaluated at a later stage, after development of the evidence, but the court agrees that to the extent that such claims are exhausted or timely, comments or statements by Corbett and Davila do not by themselves state a discrete claim for disparate treatment on the basis of race or retaliation.

### b. Hostile Work Environment

Autozoners contends that even though Ambus pleads that he brings a separate hostile work environment claim, he has not alleged harassment on the basis of race, or harassment which was sufficiently severe and pervasive to alter the terms and conditions of his employment. Autozoners states that Ambus has alleged only that he was not promoted on two occasions, that he was disciplined, and that he was retaliated against.

To establish a claim for racial harassment which created a hostile work environment, a plaintiff must show that (1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability. *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002).

Autozoners argues that the conduct identified by Ambus is discrete events, not repeated conduct, and there is no allegation of race-based conduct. Ambus has, however, alleged that Corbett treated him differently than white employees, in a negative way, by making comments about him, including that he was a thief, a drug dealer, and that he did not have common sense,

17

and that this was treatment different from treatment of white employees.  (Doc. #27 at ¶ 25).  He

has also identified repeated conduct such as write-ups.  Other allegations of the Amended

Complaint which Ambus states show that he was subjected to harassment on the basis of his race

are a comment by District Manager Keith Linson that he did not look the part of a supervisor

because he had dread locks in his hair, and that General Manager Jorge Davila "labeled him a

thief," and engaged in profanity when saying Ambus did not deserve a manager position.  Ambus

also states that Davila told other employees not to talk to him and that he was isolated from other

employees.   Ambus states that the District Manager told him he needed to cut his hair to be

taken seriously (Doc. #27 at ¶ 35).

Words that do not reference race directly can sometimes constitute racial harassment if

they are show to have a connection with race.  *See, e.g.,  Rodgers v. Western-Southern Life Ins.

Co.*, 12 F.3d 668 (7th Cir.1993).

Autozoners points largely to cases decided on motions for summary judgment in arguing

that Ambus has not adequately stated a claim for racial harassment.  The court is not determining

at this point in the proceedings that the comments pled are or are not evidence of race-based

conduct, but is merely considering the comments within the context of the allegation that Ambus

was treated differently from white employees.  It may ultimately be that upon presentation of the

evidence at the summary judgment stage, or at trial, the court concludes that Ambus has not

sufficiently proven a claim of racial harassment.  It appears to the court, however, that this

evaluation is best made after factual development in this case.

c.  Retaliation

In addition to the arguments discussed above, Autozoners argues in its Reply that Ambus

has not alleged facts to show that employment actions he suffered were harmful to the point that

they would dissuade a reasonable worker from making or supporting a charge of discrimination,

because Ambus was not dissuaded from making a charge of discrimination.  The fact that he filed

a Complaint does not preclude him from establishing there was an adverse action, however.  *See*

*Lewis v. Michaels Stores, Inc.*, No. 305-CV-1323-J-33MMH,  2007 WL 3333498, at *6 (M.D.

Fla. Nov. 7, 2007) (stating "[i]f Defendant's argument were effective, no retaliation claim filed by

a plaintiff in federal court could survive.).  Autozoners also argues that Ambus does not show

that Autozoners did not have a legitimate business reason for the decisions he complains of, but

that is an argument which will have to made based on evidence either at the summary judgment

stage, or at trial.

### d.  Disparate Impact

Autozoners argues that to the extent that Ambus bases a § 1981 claim on disparate impact

of hair style regulations, that claim is unavailing.   Ambus has clarified in his brief in response

that he is not separately claiming discrimination based on references to his hair, but intends to

use comments about the dead locks hairstyle as evidence of racial bias.  (Doc. #32-1).

Accordingly, the Motion to Dismiss as to any disparate impact claim is due to be GRANTED.

### e.  Pattern and Practice

To the extent that Ambus has attempted to state a claim on his own behalf for a pattern

and practice of discrimination, that claim is due to be DISMISSED.  *See Davis v. Coca–Cola*

*Bottling Co.*, 516 F.3d 955 (11th Cir.2008) (holding that a private litigant cannot maintain a

pattern or practice claim unless it is brought as a class action and the class is ultimately certified).

**V.  CONCLUSION**

For the reasons discussed, it is hereby ORDERED as follows:

1.  The Partial Motion to Dismiss Amended Complaint (Doc. #29) is GRANTED as to the Title VII and § 1981 claims based on a failure to promote in January 2008, all Title VII race discrimination claims based on disparate discipline for Ambus's accident, any separate Title VII and § 1981 race claims based on being shoved by Corbett and comments by Corbett or Davila, Title VII claims based on write-ups by Corbett, Title VII race claims for reduced hours between September 14, 2011 and June 14, 2012, all retaliation claims based on different discipline for an accident, any disparate impact claim based on hairstyle regulations, and any claim for a pattern and practice of discrimination, and those claims are DISMISSED.

2.  The Partial Motion to Dismiss Amended Complaint is DENIED as to (a) Ambus's Title VII and § 1981 race discrimination and retaliation claims for failure to promote Ambus to positions in July 2012 and October 2012 and for Ambus's being taken off the schedule for a week when he asked for FMLA leave; (b) Title VII race claims for reduction of hours except for the period of September 14, 2011 to June 14, 2012; (c) Title VII and § 1981 retaliation claims, and a § 1981 race claim, for reduction of hours including the period between September 14, 2011 and June 14, 2012; (d) Title VII and § 1981 claims for hostile environment racial harassment; (e) a § 1981 race discrimination claim for different discipline of drivers with accidents; and (f) § 1981 race and retaliation claims based on Corbett's writing up of Ambus.

The case will proceed on the following claims:

1.  Title VII race– failure to promote in July 2012 and October 2012; removal from schedule; reduction in hours except for the period between September 14, 2011 and June 14,

2012; and racial harassment hostile environment.

      2.  Title VII retaliation--failure to promote in July 2012 and October 2012; removal from the schedule; reduction in hours; and Corbett's writing up Ambus.

      3.  § 1981 race--failure to promote in July 2012 and October 2012; removal from the schedule; reduction in hours; Corbett's writing up Ambus; different discipline of drivers with accidents; and racial harassment hostile environment.

      4.  § 1981 retaliation---failure to promote in July 2012 and October 2012; removal from the schedule; reduction in hours; and Corbett's writing up Ambus.


Done this 29th day of March, 2013.

                          /s/ W. Harold Albritton             
                         W. HAROLD ALBRITTON
                         SENIOR UNITED STATES DISTRICT JUDGE