**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TOMMY AMBUS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.  3:12-cv-972-WHA |
| | ) | |
| AUTOZONERS, LLC, | ) | (WO) |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

This case is before the court on a Motion for Summary Judgment (Doc. # 56) filed by

Defendant AutoZoners, LLC on October 6, 2014.  Also before the court are Plaintiff Tommy

Ambus's Brief in Opposition to the Motion (Doc. # 59), and Defendant's response thereto (Doc.

# 63).

Plaintiff filed his initial Complaint, pro se, in this case on November 2, 2012.  He

thereafter filed an Amended Complaint, through counsel, on January 29, 2013.  The Amended

Complaint set forth claims for Race Discrimination, Retaliation, and Hostile Work Environment

Discrimination under both Title VII and 42 U.S.C. § 1981.  Defendant then filed a Partial Motion

to Dismiss the Amended Complaint for Failure to State a Claim.  The court granted in part and

denied in part that motion on March 29, 2013.  After the court ruled, Plaintiff's remaining claims

under Title VII, § 1981, or both were: 1) race discrimination through a failure to promote

Plaintiff twice in 2012, removal from schedule and reduction in hours,[1] denial of training, write ups of Plaintiff, and different discipline of drivers in accidents; 2) racially hostile work environment; and 3) retaliation claims through the 2012 failures to promote, removal from the schedule and reduction in hours, and the write ups of Plaintiff.  Among other claims, the Partial Motion to Dismiss was granted as to a separate failure to promote claim from a July 2008 promotion of one of Plaintiff's colleagues.

For the reasons to be discussed, the Motion for Summary Judgment is due to be GRANTED in part and DENIED in part.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion," relying on submissions "which it believes demonstrate the absence of a genuine issue of material fact."  *Id.* at 323.  Once the moving party has met its burden, the nonmoving party must "go beyond the pleadings" and show that there is a genuine issue for trial.  *Id.* at 324.

---

[1] The court construes "removal from schedule and reduction in hours" as one theory under both race discrimination and retaliation, as the parties have not discussed "removal from schedule" as a distinct claim in their briefing.  To the extent there was previously such a distinct claim, the court deems it abandoned.

Both the party "asserting that a fact cannot be," and a party asserting that a fact is genuinely disputed, must support their assertions by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56 (c)(1)(A)–(B).  Acceptable materials under Rule 56(c)(1)(A) include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."

To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor.  *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

### III. DEFENDANT'S OBJECTIONS TO PLAINTIFF'S EVIDENTIARY SUBMISSIONS

In its Reply Memorandum (Doc. # 63), Defendant argues that the evidence contained in four affidavits submitted by Plaintiff (or portions of them) cannot be properly considered on summary judgment and should be stricken.  Under Fed. R. Civ. P. 56(c)(4), an affidavit used to support or oppose a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is

competent to testify on the matters stated." The court has not relied on some of the evidence to which Defendant objected because the evidence had no bearing on any material issues related to Plaintiff's claims. Because it was not probative of a material fact, this evidence was not relevant. This evidence includes:

(1) the portion of Plaintiff's Affidavit stating the reason why he failed to report any discrimination to AutoZone Relations or Karen Shakerin; (2) the portions of Karen Ponce's Affidavit in which she discussed the 2008 promotion of Corbett,[2] her statements about Linson's feelings on Plaintiff's appearance, her statements about the reasons she believed people did not like Plaintiff, and statements about comments made by Davila's wife;[3] (3) the portions of Austin Dial's Affidavit stating that people discriminated against and harassed Plaintiff due to his race;[4] and (4) the portions of Kenyatta Meadows' Affidavit in which she discussed other employees who had accidents, what other employees were allowed to do at work, testimony about her own potential promotion, and a reference to "other instances of discrimination and retaliation."[5] As to all of the listed evidence, the court will grant Defendant's request to strike because it did not consider it.[6]

---

[2] The court previously dismissed Plaintiff's failure to promote claim based on Corbett's 2008 promotion.
[3] Plaintiff claims Davila's wife is also an AutoZone employee, (Doc. # 66 at 3 ¶ 9), but she is not mentioned anywhere else in the briefing or the Amended Complaint. Based on this, the court concludes any comments made by her are irrelevant and therefore inadmissible.
[4] These are legal conclusions not based on specific stated facts, and are therefore not properly considered on summary judgment.
[5] Like some of the statements in Dial's Affidavit, these statements are legal conclusions and are not properly considered on summary judgment.
[6] The court notes that consideration of this evidence would not change the court's determination of Defendant's Motion for Summary Judgment.

As to the portions of the affidavits to which Defendant objected, which the court has considered, the court partially agrees with Defendant's objection as to one piece of evidence, but overrules the objections as to the others.

### 1. Karen Ponce's Affidavit

The court has considered evidence that Corbett made derogatory statements about Plaintiff that did not explicitly mention race, and that she made derogatory comments about African-Americans generally. Such statements and comments need not be explicitly about race or about Plaintiff himself to be related to Corbett's intent, and are therefore relevant as circumstantial evidence. While they may not ultimately support Plaintiff's claims, they are nonetheless relevant to the factual issues surrounding Corbett's relationship with Plaintiff.

The court has considered a statement in the affidavit that Ponce believed Corbett did not like Plaintiff and wanted to get him fired only to the extent that the statement clarifies the next sentence in the affidavit, stating on personal knowledge that Ponce overheard Davila telling Corbett to write up Plaintiff "so they could get rid of him." (Doc. # 59-18 at 1.) To the extent that the court will not consider Ponce's stand-alone opinion that Corbett wanted to get Plaintiff fired and did not like him, the court concurs with Defendant's objection to that particular statement, because Ponce's opinion of Corbett's attitude is not relevant to Plaintiff's claims, at least as a separate piece of evidence.

### 2. Austin Dial's Affidavit

The court has considered evidence that Corbett stated that Plaintiff was a "drug dealer" and had "stolen stuff." This evidence will be considered as circumstantial evidence on the issue of intent. This evidence is not hearsay because it is not offered for the truth of the matter

5

asserted (*i.e.*, it is not offered to prove that Plaintiff is or was a drug dealer or a thief; only as evidence of Corbett's attitude toward him).  The Defendant's objection is due to be overruled as to this evidence.

### 3.  Kenyatta Meadows' Affidavit

The court has considered evidence that Davila told Meadows not to talk to Plaintiff, as this is circumstantial evidence relevant to Plaintiff's hostile work environment claim.  This is not inadmissible hearsay as Davila's commands to Meadows are not offered for the truth of the matter asserted (*i.e.*, that the employees did not in fact talk to Plaintiff).  The court has also considered evidence that Meadows personally saw a stack of write ups of Plaintiff left out for all to see, as this evidence is based on personal knowledge and is probative of Plaintiff's claims. The Defendant's objections to this evidence are also due to be overruled.

## IV. FACTS

The submissions of the parties establish the following facts, construed in the light most favorable to the nonmovant, the Plaintiff:

### a.  Plaintiff's Employment Relationship with Defendant

Plaintiff, an African-American, was first hired by Defendant as a part-time driver in February 2004.  He was hired to work at the Opelika store, which is a "HUB" store and additionally has a commercial department and a "DIY" retail component.  HUB stores serve as small regional warehouses that service fifteen to twenty-one nearby stores. Plaintiff moved up to a management position as a Parts Sales Manager (PSM) in the HUB area of the store in 2007. This promotion also moved him from part-time to full-time status.  He continued to be paid by the hour and received a $3.00/hour pay raise.   The promotion brought him to the level of a "gray

shirt," or management-level, employee.  In contrast, part-time employees are "red shirt" employees.  Plaintiff's main job duties as a PSM were "picking" (selecting) parts from the HUB and driving them to other stores as needed.  By the time Plaintiff was promoted, he reported to Jorge Davila, Store Manager of the Opelika store.  Davila reported to Keith Linson, the District Manager.  Linson is African-American and Davila is black and of Puerto Rican origin.  Plaintiff also worked with and under Elizabeth Corbett, HUB Coordinator at the Opelika store, and Jessie Harris, Assistant Store Manager at the same store.  Corbett is white and Harris is African-American.

Corbett, Plaintiff, and other coworkers described tension between Corbett and Plaintiff throughout the time periods relevant to Plaintiff's claims.  Plaintiff and others believe Corbett did not like Plaintiff at least in part because he is African-American.  Other AutoZone[7] employees heard Corbett refer to Plaintiff as a "drug dealer" and say that he had "stolen stuff." Another employee heard Davila tell Corbett to write Plaintiff up "so they could get rid of him."

In addition, Davila was overheard using negative profanity to refer to black men in general.  He also told other employees not to speak with Plaintiff.

### b.  Plaintiff's Automobile Accident and Speeding Violations

Plaintiff received two speeding violations, the first in March of 2009 and the second in April of 2010.  These violations went on his driving record, and were in turn reported to AutoZone.  Additionally, he caused a car accident in October 2010 while driving a company vehicle.  He was then removed from driving duties pursuant to company policy, because he had two major violations within the twelve-month period of the calendar year of 2010.  In order to

---

[7] The parties use the name "AutoZoners" and "AutoZone" interchangeably.

continue the rest of his job duties, he began splitting his time between the Opelika store and the nearby Auburn store.  Plaintiff's view is that discrimination against him began in October of 2010, after his accident and removal from driving duty.

### c.   The March 2011 Shoving Incident

In March of 2011, Plaintiff and Corbett were in an altercation in which Corbett shoved Plaintiff, in his view both because he was black and because she did not like him.  Corbett's interpretation of the incident was that she walked past Plaintiff as she was handing in some paperwork, and she "brushed him with [her] hand and the papers."  (Doc. # 56-5 at 24:4–7.)  While Corbett would normally apologize to the person in a situation such as this incident, she did not apologize to Plaintiff because they "were not on good terms at the time."  (*Id.* at 26:11–23.)

### d.   Aftermath of the Shoving Incident

Plaintiff reported the shoving incident to Karen Shakerin, Human Resources Manager, and to Assistant Store Manager Jessie Harris.  He did not tell Shakerin that he thought racial discrimination played a role in the incident, but he did tell Harris that he was shoved on account of his race.  Shakerin took statements from both Corbett and Plaintiff as part of an investigation of the incident.  Shakerin's investigation yielded no disciplinary action against either party.

### e.   Scheduling Issues

Plaintiff was dissatisfied with how he was scheduled throughout the spring and summer of 2011.  From mid-2008 onward, Plaintiff generally worked 38–40 hours per week.  From March 20, 2011 until August 21, 2011, he averaged between 35 and 36 hours per week.  After Plaintiff complained, Shakerin had conversations with District Manager Linson and Opelika Store Manager Davila, and eventually a call with both Linson and Plaintiff, to ensure Plaintiff

was being scheduled for 38–40 hours per week.  Corbett makes the schedules, and Linson

approves them as to allotted hours and to limit the amount of total overtime on the schedule.

### f.   Write Ups of Plaintiff

Corbett "wrote up" Plaintiff on multiple occasions regarding how he performed his job.

At least one such write up listed Davila's name but was in Corbett's handwriting.  On at least

one occasion a stack of write ups of Plaintiff were left out on a counter in a public area where

other employees could see them.  There is evidence before the court that one employee did see

them there on one occasion.

### g.   September 2011 EEOC Charge

Plaintiff filed his first EEOC Charge of Discrimination in September of 2011, stating that

it was based on race.  This charge mentioned the shoving incident and claimed that Plaintiff

reported Corbett and nothing happened as a result.  The charge also alleged his hours had been

reduced and that he had been taken out of his department.

### h.   Hiring of Alan Tidwell (May 2012)

Plaintiff became aware of an open position for an Assistant Store Manager (ASM) around

May of 2012.  He later learned the position went to Alan Tidwell, who was recruited from

Downtown Tires due to his experience and performance during his employment there.  Tidwell

had previously worked for a company called Carquest.  In Linson's view, Tidwell's attractive

qualifications included his ASE (Automotive Service Excellence) certification, his management,

retail, and automotive experience, and the fact that he was bilingual.

### i. Promotion of Johnny Wade (October 2012)

After Tidwell was promoted again in October of 2012, Johnny Wade was promoted to the newly vacant ASM position.  Wade had previously worked for AutoZone for four years as a PSM, an Assistant Manager, and a Store Manager.  He was a service manager while employed elsewhere before returning to AutoZone.  Like Tidwell, Wade is ASE certified. He has about 28 years of automotive customer service experience.

To be promoted internally to ASM at AutoZone, an employee must be recommended by a supervisor, generally a store manager, and must have experience working the DIY retail counter.  Linson made the hiring decisions to put Tidwell and then Wade into the ASM position.

### j. December 2012 EEOC Charge

After Tidwell and Wade received the ASM position in May and October, respectively, Ambus filed a second EEOC Charge in December of 2012.  In addition to complaining about the promotions, Plaintiff complained of being taken off the schedule and denied training.  He stated he believed he was being discriminated against on account of his race and in retaliation for his previous charge.  Plaintiff had previously filed his Complaint in the instant case in November of 2012.

### V. DISCUSSION

### 1. Race Discrimination: Disparate Treatment

Where, as here, the plaintiff seeks to prove intentional discrimination on the basis of race under Title VII[8] by using circumstantial evidence of intent, the court applies the framework first

---

[8] Employment claims brought under Title VII and § 1981 are subject to the same analytical framework.  *Brown v. Am. Honda Motor Co.*, 939 F.2d 946, 949 (11th Cir. 1991) (citing *Patterson v. McLean Credit Union*, 491 U.S. 164, 176 (1989)).

set out by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792

(1973).  Under this framework, the plaintiff must establish a prima facie case of discrimination.

*McDonnell Douglas*, 411 U.S. at 802.  After the plaintiff has established a prima facie case of

discrimination, the burden of production is placed upon the employer to articulate a legitimate

nondiscriminatory reason for its employment action.  *Texas Dep't of Cmty. Affairs v. Burdine*,

450 U.S. 248, 254 (1981).  This burden of production is "exceedingly light" and is discharged so

long as the defendant articulates some "clear and reasonably specific" nondiscriminatory basis

for its decisions.  *Vessels v. Atlanta Ind. Sch. System*, 408 F.3d 763, 769–70 (11th Cir. 2005).

The plaintiff may seek to demonstrate that the proffered reason was not the true reason for the

employment decision "either directly by persuading the court that a discriminatory reason more

likely motivated the employer or indirectly by showing that the employer's proffered explanation

is unworthy of credence."  *Burdine*, 450 U.S. at 256; *see also Combs v. Plantation Patterns*, 106

F.3d 1519, 1528 (11th Cir. 1997).  A plaintiff's prima facie case, combined with sufficient

evidence to find that the employer's asserted justification is false, may permit the trier of fact to

conclude that the employer unlawfully discriminated.  *Reeves v. Sanderson Plumbing Prods.,

Inc.*, 530 U.S. 133, 147 (2000).  Even if a plaintiff establishes a prima facie case and offers

sufficient evidence of pretext as to each of the proffered reasons, summary judgment "will

sometimes be available to an employer in such a case" depending on the circumstances of the

case.  *Chapman v. AI Transport*, 229 F.3d 1012, 1025 n.11 (11th Cir. 2000).

       Plaintiff has alleged multiple claims of racial discrimination through disparate treatment.

The disparate treatment theories in the Complaint are that Defendant discriminated against

Plaintiff on the basis of race in five ways: 1) by promoting Tidwell and Wade instead of

promoting Plaintiff; 2) by reducing Plaintiff's scheduled work hours for a period of time, thereby treating him less favorably than other employees; 3) by writing up Plaintiff and leaving the write ups out for other employees to see; and 4) by disciplining other drivers less harshly than Plaintiff after Plaintiff and the other drivers got into separate motor vehicle accidents, and (5) denial of training.

A prima facie case of disparate treatment discrimination consists of four elements: 1) the plaintiff belongs to a protected class; 2) the plaintiff was qualified to do the job; 3) the plaintiff was subjected to an adverse employment action; and 4) the plaintiff's employer "treated similarly situated employees outside [his] class more favorably." *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008). Importantly, "Title VII is neither a general civility code nor a statute making actionable the ordinary tribulations of the work place." *Cotton v. Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227, 1234 (11th Cir. 2006). Under Title VII, federal courts "do not sit to second-guess the business judgment of employers." *Combs*, 106 F.3d at 1543.

For the reasons discussed below, the court concludes that summary judgment is proper on all of Plaintiff's disparate treatment discrimination claims except his hours reduction claim.

### a. Failure to Promote

#### i. Prima Facie Case

As a preliminary matter, the parties agree that failure to promote an employee qualifies as an "adverse employment action" for purposes of Title VII and § 1981. (Doc. # 56 at 19–20.) (Defendant concedes that alleging a failure to promote claim satisfies the "adverse employment action" prong of a disparate treatment claim.) The court therefore proceeds to discuss whether Plaintiff has met the remaining elements of a prima facie case for failure to promote disparate

treatment.  For the reasons discussed below, the court concludes that he has not made his prima

facie case, but even if he had, he has not submitted evidence sufficient to create a fact issue as to

whether Defendant's proffered legitimate reasons for promoting others over Plaintiff are

pretextual.

> Within the specific context of a failure to promote claim:
>
> [T]he plaintiff must prove the following four elements: 1) that she belongs to a
> protected class; (2) that she was qualified for and applied for a job for which the
> employer was seeking applicants; 3) that, despite her qualifications, she was
> rejected; and 4) that, after her rejection, the employer continued to seek applicants
> or filled the position with a person outside of the plaintiff's protected group.

*Vessels*, 408 F.3d at 768; *see also Walker v. Mortham*, 158 F.3d 1177, 1186 (11th Cir. 1998).  As

to the second element, the plaintiff need not establish as part of the prima facie case that "the

successful applicant for [his] coveted position was less than or equally qualified to hold the

position."  *Walker*, 158 F.3d at 1193.  The plaintiff is only required to present evidence as to

relative qualifications if and when his employer raises the issue in response to the presumption of

discrimination created by the plaintiff's prima facie case.  *Id.*

Turning to an analysis of Plaintiff's prima facie case here, the court first notes it is

undisputed that Plaintiff belongs to a protected class, because he is African-American.

Additionally, Plaintiff has satisfied the third element because he was not promoted to Assistant

Store Manager, while Tidwell and Wade both were placed in the position.  The fourth element is

also satisfied.  Defendant filled the Assistant Store Manager position with individuals outside

Plaintiff's protected class on each failure to promote occasion—both Tidwell and Wade are

white.   (Doc. # 59-1 (Plaintiff Depo.) at 128:1–2, 130: 11–17.)[9]  The only remaining issue for

analysis is whether Plaintiff was qualified for the Assistant Store Manager position, under the

second element of the showing required to make out a prima facie case.

      The court finds Plaintiff was not qualified for a promotion because no Store Manager

ever recommended him.[10]  To be eligible for internal promotion, it is the practice that an

AutoZone employee must be recommended by a store manager.  When AutoZone looks to

promote from within, management starts with an "inventory team" list consisting of employees

recommended by the store manager.  (Doc. # 59-2 (Linson Depo.) at 26:18–27:11.)  Store

managers are viewed as having the day-to-day experience working with employees necessary to

make good recommendations.  (*Id.* at 25:19–23.)  According to Linson, Plaintiff was not

recommended by Store Managers Davila, Russ Webb (commercial manager at Opelika store),

Steve Williams at the Auburn store, or Paul Godfrey, who is also a store manager.  (*Id.* at  27:4–

28:1, 29:11–17.)  Therefore, he did not meet the qualification of having been recommended by a

store manager. Plaintiff nowhere contends the opposite.  The record indicates that there is no fact

issue regarding whether Plaintiff was qualified in this respect, and therefore he has not met the

burden required to make a prima facie case.

      Even if Plaintiff had made a prima facie case on his failure to promote claim, however,

by establishing that he was qualified for the position, the court still finds summary judgment

---

[9] The deposition testimony cited refers to a "Johnny Ray."  The court infers from surrounding testimony and the
pleadings of the parties that the Plaintiff was referring to Wade in this portion of the testimony.

[10] The parties dispute in their briefs whether Plaintiff had sufficient experience working at the DIY counter to be
considered for a promotion.  The court has not considered this aspect of Plaintiff's qualifications; as such an analysis
is unnecessary in light of Plaintiff's lack of recommendations, which independently render him unqualified for
internal promotion.

proper on this issue because Defendant has proffered legitimate reasons for its business

decisions, and Plaintiff has not submitted sufficient evidence to create a fact issue as to pretext.

### ii.  Defendant's Legitimate Nondiscriminatory Reasons for Promoting Tidwell and Wade, and Not Promoting Plaintiff

Defendant maintains it promoted Tidwell and Wade because they had "more automotive,

management, and retail experience" than Plaintiff.  Linson testified at his deposition that

Tidwell's experience with Downtown Tires indicated to Autozoners that "he understood both

sides of the business, the commercial and the salesmanship part," and that "he definitely knew

cars." (Doc. # 59-2 at 24:12–19.)  It was Linson's opinion that "[Tidwell] ran Downtown really

well, that's why we recruited him." (*Id.* at 24:23–25:1.)  As to Wade, Linson testified that

because Wade was previously a manager, "we already kind of knew what he can do," and Linson

knew "[Wade] had ten, twenty years of automotive experience, managerial experience." (*Id.* at

32:7–13.)  Defendant also highlights the fact that both Tidwell and Wade are ASE certified.

(Doc. # 56-3 at 97:14 (Tidwell); Doc. # 56-7 at 22:17–25 (Wade).)  Though not a requirement

for the ASM position, Linson saw the ASE certification as a favorable qualification for ASM

candidates. (Doc. # 56-3 at 97:14.)  Plaintiff is not ASE certified. (Doc. # 56-1 at 36:9–10.)

To the extent that Linson's assessments of Tidwell and Wade involve some quantum of

subjectivity as to each candidate's potential and suitability for the Assistant Store Manager

position, Defendant's proffered reasons nonetheless remain legitimate because "a subjective

reason is a legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a

clear and reasonably specific factual basis upon which it based its subjective opinion." *Denney*

*v. City of Albany*, 247 F.3d 1172, 1186 (11th Cir. 2001).  The court finds Defendant has

15

articulated "clear and reasonably specific" factual bases for the promotions of both Tidwell and Wade, pertaining to those candidates' qualifications. These bases were supported by Tidwell and Wade's respective employment experience and their ASE certifications.

The foregoing evidence satisfies Defendant's "exceedingly light" burden of proffering a legitimate nondiscriminatory reason for its actions.  The record indicates that Tidwell and Wade possessed qualifications and skills that led to their recruitment and promotions at Autozone.

### iii.  Plaintiff's Evidence that Defendant's Reasons for Promoting Tidwell and Wade Are Pretextual

In addition to the fact that Plaintiff has not made a prima facie case for failure to promote discrimination, even if he had, he has not met his burden of showing that Defendant's reasons for promoting other employees are pretextual.

To establish pretext, a plaintiff in a failure to promote case must show "*both* that the reason was false, *and* that discrimination was the real reason." *Brooks v. Cnty. Comm'n of Jefferson Cnty.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515 (1993)) (emphasis in original).  The plaintiff must also show that "the disparities between the successful applicant's and [his] own qualifications were of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff."  *Id.* (internal quotations and citations omitted).

The court finds Plaintiff has not met his burden to establish pretext.  The record indicates that both Tidwell and Wade had such experience in the automotive industry that a reasonable person might choose them for promotion over Plaintiff.  While the court has not reached the issue whether Plaintiff worked the DIY counter often enough to be qualified for internal

promotion, the record does indicate that both Tidwell and Wade had more experience working directly with customers than Plaintiff did.  To the extent that Plaintiff may have occasionally worked with customers at the DIY retail area of the store, this experience was much more sporadic than Tidwell and Wade's respective experience working with customers on a regular basis.[11]  Plaintiff has not established that Defendant's proffered legitimate reason was false, nor has he shown that no reasonable person could have chosen Wade or Tidwell over him for promotion to Assistant Store Manager.

For these reasons, summary judgment is due to be GRANTED on Plaintiff's failure to promote race discrimination claim.

### b. Hours Reduction and Removal from Schedule

#### i. Prima Facie Case

Plaintiff has established a prima facie case of disparate treatment as to the alleged reduction in his hours.  First, it is undisputed that Plaintiff belongs to a protected class as he is African-American.  Second, there is no dispute that he was and is qualified to perform his job as Parts Service Manager.  Therefore, the court turns to the third element of the prima facie case: whether a reduction in his hours could be viewed as an adverse employment action for purposes of this claim.

An adverse employment action is one that "impact[s] the 'terms, conditions, or privileges' of the plaintiff's job in a real and demonstrable way."  *Davis v. Town of Lake Park,*

---

[11] Tidwell's experience at Downtown Tire included experience in both "the commercial and salesmanship part[s]" of the business.  (Doc. # 56-3 at 24:12–16.)  Linson stated that Tidwell had "great customer service" and "business acumen."  (*Id.* at 97:13–16.)  As to Wade, Linson noted that he had "ten, twenty years of automotive experience, managerial experience."  (*Id.* at 32:12–13.)  Wade had also previously been a manager at AutoZone before returning to the company after a period of employment elsewhere.  (*Id.* at 32:7–10.)  He has 28 years of experience working in the automotive retail industry with customers.  (Doc. # 56-7 at 22:17–18.)

*Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001).  The Eleventh Circuit has ruled that "[a] reduction in an employee's hours, which reduces the employee's take-home pay, qualifies as a tangible employment action."  *Cotton*, 434 F.3d at 1231.[12]  Therefore, if proven, an unjustified reduction in Plaintiff's hours may qualify as a materially adverse employment action and thereby satisfy the third element of his prima facie case.  This is because reduced hours would negatively impact Plaintiff's take-home pay.   Plaintiff has submitted sufficient evidence of the hours reduction to satisfy the third element.

Plaintiff's evidentiary submissions are sufficient to support a prima facie case of disparate treatment including disputed issues of fact as to whether Corbett began scheduling him for fewer hours in the spring of 2011.  Plaintiff and Defendant substantially agree on the data presented in Plaintiff's spreadsheet of hours worked, but they interpret it differently.  Construing the evidence in the light most favorable to Plaintiff, he may in fact have been scheduled for fewer overall hours until Shakerin and others intervened to ensure Plaintiff was being scheduled properly.  Shakerin testified that she spoke with Plaintiff, Davila, and Linson about the scheduling issue, and that she "ended up having a call with [Plaintiff] and with his district manager so that everybody was level set in terms of [Plaintiff] is to be scheduled between 38 and 40 hours because he is a full-time employee."  (Doc. # 59-7 at 14:1–12.)  The evidence permits a reasonable jury to infer that Plaintiff was scheduled for fewer overall hours for a five-month period of time following the shoving incident and his resulting complaints.  Under that interpretation of the record, Plaintiff suffered an adverse employment action in that his hours

---

[12] *Cotton* was a Title VII sexual harassment case, but the Eleventh Circuit has used the standard for a sexual harassment "tangible employment action" interchangeably with that for a disparate treatment "adverse employment action."  *See Hyde v. K.B. Home, Inc.*, 355 F. App'x 266, 271 (11th Cir. 2009) (tangible employment action in harassment analysis is "similar to" the one for adverse employment action in disparate treatment cases) (citing *Webb-Edwards v. Orange Cnty. Sheriff's Office*, 525 F.3d 1013, 1031 (11th Cir. 2008)).

were reduced below the threshold for which he otherwise would have been scheduled.  This is sufficient to satisfy the third element of his prima facie case of racial discrimination.

The fourth and final element of the prima facie case is that the employer must have treated "similarly situated employees" outside the protected class more favorably than the plaintiff.  Here, similarly situated employees to Plaintiff include only other full time managers—not part time, "red shirt" employees.  The court notes that all evidence and testimony as to the treatment of "red shirt" employees is not relevant and has not been considered as support for Plaintiff's prima facie case on the hours reduction issue.

In support of this claim, Plaintiff cites his deposition testimony, in which he alleged that other managers at the HUB "were getting way more hours than [he was getting]."  (Doc. # 59-1 at 179:8–9.)  When asked to specify who these other managers were, Plaintiff mentioned Travis Cummins[13] and George Baumgart.  (*Id.* 179:11–14.)  Both of these other employees are white.[14] (*Id.* at 179:20–23.)

In sum, Plaintiff has alleged and supported through deposition testimony that at least two white managers received "way more hours" than he was getting during the relevant five-month period of time.  These employees were both similarly situated to Plaintiff because they were also employed as full-time managers, and they were outside Plaintiff's protected class because they are white.  Construing the record in the light most favorable to Plaintiff, as it must, the court

---

[13] Plaintiff did not specify Travis's last name in this portion of his deposition.  The court infers he is the same individual as the "Travis Cummins" identified alongside George Baumgart on page 191 of Plaintiff's deposition at line 19.

[14] Defendant argues that Plaintiff testified that the proper comparator employees were "both Caucasian and Black." (Doc. # 63 at 12; *see also* Doc. # 56 at 19.)  In contrast, the court reads Plaintiff's testimony to say that all the employees he mentioned were white, except Marchelous, who was a red shirt employee and also was black. (Doc. # 59-1 at179:11–23) (in response to question whether all employees named were white, Plaintiff states all except Marchelous are white).  Because Marchelous is a red shirt employee and therefore not a valid comparator, the court infers that Plaintiff's testimony was that the only valid comparators, Travis and George, are both white.

concludes that Plaintiff has created a genuine issue of material fact as to the "more favorable treatment" element of his prima facie case. Therefore, Plaintiff has established a prima facie case for summary judgment purposes.

### ii. Defendant's Legitimate Nondiscriminatory Reason for Scheduling Plaintiff for Fewer Hours, and Plaintiff's Rebuttal

To support its argument that any reduction in Plaintiff's hours was not discriminatory, Defendant states that "Plaintiff asked for time off to avoid school and to avoid working weekends." (Doc. # 56 at 19.)  This qualifies as a legitimate, nondiscriminatory reason to schedule Plaintiff for fewer hours.  Therefore, Plaintiff can only survive summary judgment by producing evidence that this stated reason is pretextual.  He has done so both in his testimony, where he affirmed that he never told his supervisors he needed time off for school,[15] and in his affidavit, where he swore to the same.  (Doc. # 59-1 at 153:12–20; Doc. # 59-17 at 1 ¶ 2.)  By directly refuting Defendant's legitimate nondiscriminatory reason for reducing Plaintiff's hours using his own testimony, Plaintiff has created a genuine issue of material fact sufficient to survive the summary judgment stage.  Therefore, summary judgment on this claim is due to be DENIED.

### c. Write Ups

The court finds that the write ups of Plaintiff cannot constitute an adverse employment action for the purposes of his disparate treatment discrimination claim.  Unlike the employment actions discussed above, the write ups did not "impact the 'terms, conditions, or privileges' of

---

[15] Defendant refers to "the testimony that Plaintiff asked for time off to attend school and to avoid working weekends," and cites Plaintiff's deposition along with Shakerin's deposition.  (Doc. # 56 at 19.)  However, after reviewing the cited portions of Plaintiff's deposition, the court concludes his testimony was that he *never* asked for time off for school reasons.  (Doc. # 59-1 at 153:12–20.)  Plaintiff also never testified that he asked to avoid working on weekends, but he did admit he was "okay" with that schedule and he would not rather be working weekends. (Doc. # 59-1 at 151:10–152:17.)

the plaintiff's job in a real and demonstrable way." *Davis*, 245 F.3d at 1239. The employee's subjective view of the action's effect is not dispositive; rather, the action must also be "materially adverse as viewed by a reasonable person under the circumstances." *Id.* In the majority of cases, a written reprimand alone cannot meet this threshold. *Id.* at 1241. Courts are "wisely reluctant to treat job performance memoranda as actionable under Title VII where they do not trigger any more tangible form of adverse action such as a loss in benefits, ineligibility for promotional opportunities, or more formal discipline." *Id.*; *see also Smith v. Ala. Dep't of Pub. Safety*, 64 F. Supp. 2d 1215, 1222 (M.D. Ala. 1999) (evidence of a "bruised ego" alone is insufficient) (citing *Flaherty v. Gas Research Institute*, 31 F.3d 451, 457 (7th Cir. 1994)).

Plaintiff has not argued that the write ups were accompanied by any sort of material and tangible harm such as those described above. He also has not cited any evidence that could support such an argument. He further has not set forth evidence that the write ups are "materially adverse" when viewed objectively by "a reasonable person under the circumstances." Because Corbett's write ups of Plaintiff cannot be considered an "adverse employment action" under relevant precedent, summary judgment on this claim is due to be GRANTED.[16]

### d. Different Discipline of Drivers with Accidents and e. Denial of Training

To the extent Plaintiff previously claimed that Defendant denied him training and unjustifiably disciplined him for his traffic accidents more harshly than his white colleagues, constituting a separately actionable "adverse employment action," Plaintiff's Brief in Opposition to the Motion for Summary Judgment does not respond to Defendant's arguments as to these claims. Therefore, these claims are deemed abandoned. *See Resolution Trust Corp. v. Dunmar*

---

[16] The claim that write ups were left out for others to see is more properly considered in relation to the Plaintiff's hostile environment claim.

*Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (holding a nonmovant's silence on an issue after a movant raises the issue in a summary judgment motion is construed as an abandonment of the claim).  Summary judgment is due to be GRANTED on these claims.

### 2.  Race Discrimination: Hostile Work Environment

To establish a prima facie claim for hostile work environment, Plaintiff must satisfy the following five elements:

> (1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee, such as national origin; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or direct liability.

*Miller v. Kenworth of Dothan, Inc.*, 277 F .3d 1269, 1275 (11th Cir. 2002).

It is undisputed that Plaintiff has satisfied the first element, because he is African-American, and the court will assume that he has satisfied the second element.

The court finds that the Plaintiff has failed to submit sufficient evidence to establish a genuine issue of fact as to the third element of the prima facie case—that is, as to whether any harassment was based on Plaintiff's race.  It is a "bedrock principle that not all objectionable conduct or language amounts to discrimination under Title VII." *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 809 (11th Cir. 2010).   In order to support a hostile work environment claim, any harassment or discrimination must be related to a protected category—in this instance, race.  "Title VII does not prohibit profanity alone, however profane.  It does not prohibit harassment alone, however severe and pervasive.  Instead, Title VII prohibits discrimination, including harassment that discriminates based on a protected category such as

[race]." *Baldwin v. Blue Cross/Blue Shield of Ala.*, 480 F.3d 1287, 1301–02 (11th Cir. 2007).

The "statements and conduct [complained of] must be of a [racial] nature . . . before they are

considered in determining whether the severe or pervasive requirement is met." *Gupta v. Fla.*

*Bd. of Regents*, 212 F.3d 571, 583 (11th Cir. 2000), *overruled on other grounds by Burlington N.*

*& Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).

Plaintiff's hostile work environment claim is based on the following events: (1) Corbett

and Davila told another employee to stop dating black men "because they are worthless" (Doc.

# 58-18 at 2); (2) Corbett told others that Plaintiff was a drug dealer and a thief; (3) Corbett left

out a stack of write ups of Plaintiff for all to see, and one person did see them on one occasion;

(4) Davila and others told all of Plaintiff's coworkers not to speak to him; (5) Corbett shoved

him and did not apologize, and Plaintiff personally believed her behavior was related to his race;

and (6) Plaintiff's hours were slightly reduced by Corbett for a five-month period compared to

two similarly situated white employees after the shoving incident.[17]

The only comment or instance of conduct listed by Plaintiff that is expressly related to

race is the allegation that Corbett and Davila told another employee to stop dating black men

"because they are worthless."  None of the other comments relates to Plaintiff's race, and this

particular one was not directed at Plaintiff himself.  While a plaintiff need not hear a harassing

comment firsthand in order to establish a hostile work environment, *Busby v. City of Orlando*,

931 F.2d 764, 785 (11th Cir. 1991), here Plaintiff has presented no evidence that he heard this

comment before discovery in this litigation.  Therefore, he has not shown that it could have

---

[17] Although Plaintiff included it in his hostile work environment briefing, the court will not consider Ponce's personal opinion that Davila and Corbett did not like Plaintiff because, standing alone with no additional facts, it is not probative as to whether Plaintiff experienced a hostile work environment.

contributed to the allegedly hostile work environment.  *See Greywoode v. Sci. Applications Int'l Corp.*, 943 F. Supp. 2d 1355, 1371 (M.D. Ala. 2013) (in order for conduct not in plaintiff's presence to be part of hostile environment claim, he must know of it during the time the work environment was allegedly hostile).

As to the statements and conduct not expressly related to race, although words not directly related to race may sometimes constitute racial harassment, there must be a surrounding context in which it is clear that a comment is "intended as a racial insult."  *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1297 (11th Cir. 2012) (collecting cases in which the word "monkey" and similar terms have been interpreted as racial insults given "history of racial stereotypes against African-Americans and the prevalent one of African-Americans as animals or monkeys"); *see also Zeigler v. Ala. Dep't of Human Resources*, 710 F. Supp. 2d 1229, 1245–46 (M.D. Ala. 2010) (plaintiff must provide context from which factfinder could conclude a comment or action was indirectly race-related to survive summary judgment).  Here, Plaintiff has not established any basis for the court to conclude that conduct by Corbett and Davila not expressly related to race was intended as a racial insult.

Even if Plaintiff had shown a genuine issue of fact as to this third element, however, Plaintiff's evidence is insufficient as a matter of law to show that any harassment "was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment."  *Id.*  Plaintiff's claim independently fails because the record cannot sustain the fourth element of a hostile work environment claim.

To satisfy the "severe or pervasive" element, a plaintiff must show that the environment was "both objectively and subjectively offensive, one that a reasonable person would find hostile

or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998). Whether the work environment is a hostile one "can be determined only by looking at all the circumstances," and the court may examine factors such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993). The workplace must be "permeated" with "discriminatory intimidation, ridicule" and insults. *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012).

Even construed in the light most favorable to Plaintiff, the evidence he cites does not rise to the threshold of severity required for a hostile work environment claim. At most, the evidence upon which Plaintiff relies for this claim indicates that there was tension between Corbett and Plaintiff and between Davila and Plaintiff. The incidents in which comments were directed at Plaintiff himself were, according to the evidence cited, relatively infrequent. Plaintiff's evidence does not present an image of a workplace "permeated" with discriminatory insults, intimidation, or ridicule. Being ignored by coworkers may be unpleasant, but is not one and the same with insults, intimidation, or ridicule. The fact that Plaintiff has continued as an employee of Defendant throughout the years in which he cited discriminatory actions and comments, along with the fact that his supervisors including Davila generally acknowledge that he "does his job" (Doc. # 59-3 at 10:14), lends further support to the conclusion that any tension or mistreatment did not "unreasonably interfere[] with [Plaintiff's] work performance." *Harris*, 510 U.S. at 23.

For the reasons discussed above, the court finds that the Plaintiff has failed to submit evidence sufficient to create a genuine issue of fact sufficient to establish a prima facie case of

racially hostile work environment.  Therefore, summary judgment on this claim is due to be
GRANTED.

### 3.  Retaliation

At this stage of the case, Plaintiff's remaining retaliation claims under Title VII and
§ 1981 are based on three potential adverse employment actions: (1) failure to promote; (2)
reduction of hours; and (3) write ups of Plaintiff by Corbett.  Title VII makes it unlawful for
employers "to discriminate against . . . [an] employee[ ] or applicant[ ] for employment . . .
because he has opposed any practice made an unlawful employment practice by this subchapter,
or because he has made a charge, testified, assisted, or participated in any manner in an
investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e–3(a).

A prima facie case of retaliation contains three elements: first, the plaintiff engaged in
statutorily protected conduct; second, the plaintiff suffered an adverse employment action; and
finally, the adverse action was causally related to the protected expression.  *Williams v.
Motorola, Inc.*, 303 F.3d 1284, 1291 (11th Cir. 2002) (quotation omitted).  An action is
materially adverse if it might dissuade "a reasonable worker from making or supporting a charge
of discrimination." *Burlington N.*, 548 U.S. at 68.  A causal relationship must be established
through evidence that the "desire to retaliate" against the protected expression was the "but-for
cause" of the adverse action.  *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2528
(2013).  This requires proof that the unlawful retaliation would not have occurred in the absence
of the alleged wrongful action of the employer.  *Id.*  If the employee establishes a prima facie
case of retaliation, the burden shifts to the employer to articulate a legitimate reason for the
adverse employment action.  *Shannon v. Bellsouth Telecomms., Inc.*, 292 F.3d 712, 715 (11th

Cir. 2001).  If the employer does so, the employee has the burden of showing the legitimate reason was pretextual.  *Id.*

Important for the purposes of this case, the definition of an "adverse employment action" in retaliation cases does not perfectly overlap with the standard for an adverse employment action under the substantive discrimination provisions of Title VII and § 1981.  Unlike the substantive discrimination provisions, adverse employment actions in retaliation claims need not affect the "terms and conditions" of employment because the "[statutory] purpose reinforces what language already indicates, namely, that the antiretaliation provision, *unlike the substantive provision*, is not limited to discriminatory actions that affect the terms and conditions of employment."  *Burlington N.*, 548 U.S. at 64 (emphasis added).  Therefore, purported adverse employment actions may not support a prima facie case for discrimination, yet still support a prima facie case for retaliation under the same or related facts.  For retaliation purposes, an action qualifies as adverse if it would dissuade "a reasonable worker from making or supporting a charge of discrimination," *id.* at 68, and it need not necessarily affect the "terms and conditions" of employment" by affecting the employee's compensation.

### a.   Statutorily Protected Activities

Statutorily protected activities include complaints to the EEOC and complaints to supervisors about illegal discrimination.  *See Shannon*, 292 F.3d at 715 n.2 ("Title VII protects not just 'individuals who have filed formal complaints,' but also those 'who informally voice complaints to their superiors or who use their employers' internal grievance procedures.'") (quoting *Rollins v. State of Fla. Dep't of Law Enforcement*, 868 F.2d 397, 399 (11th Cir. 1989)).  Here, three instances of conduct by Plaintiff qualify as "statutorily protected activity"—his

report to Harris that Corbett shoved him based at least in part on his race in March of 2011; his September 2011 EEOC charge; and his December 2012 EEOC charge.  Plaintiff's report of the shoving incident to Shakerin does not qualify because he did not allege any discrimination on the basis of race.  Plaintiff only mentioned race as an issue to Harris, a supervisor.  The mention of race is critical for the retaliation claim because the statute requires that the plaintiff have "opposed any practice *made an unlawful employment practice by this subchapter*."  42 U.S.C. § 2000e–3(a) (emphasis added).  In this case, the "unlawful employment practice" at issue is race discrimination, so any statutorily protected activity must have involved some mention or report of race discrimination specifically.

In order to avoid summary judgment on his retaliation claims, Plaintiff must present evidence that he suffered an adverse employment action that was causally connected to one of his three statutorily protected actions.

### b.  Adverse Employment Actions

Plaintiff's remaining retaliation claims are premised on three possible adverse employment actions: 1) the failure to promote him on two occasions; 2) reduction in his hours and unfavorable scheduling; and 3) Corbett's write ups of Plaintiff left out publicly for others to see.  As noted above, while the standard for adverse employment actions may be similar for retaliation claims and discrimination claims, the action need not have affected the "terms and conditions" of employment to sustain a retaliation claim.

The Supreme Court has held that an employment action qualifies as adverse for retaliation purposes if it "could well dissuade a reasonable worker from making or supporting a charge of discrimination."  *Burlington N.*, 548 U.S. at 57.  This "reasonable worker" standard

makes the analysis a highly fact intensive one, particular to the context of each individual case. The fact intensive nature of the inquiry necessitates wide leeway for the judgment of the factfinder as to what would dissuade "a reasonable worker" from making a charge, as long as there is sufficient evidence to bring a claim to trial.

First, the court need not consider whether the failure to promote theory can sustain a retaliation claim as an adverse employment action. For reasons discussed below, this part of Plaintiff's claim fails because there is not sufficient evidence to establish a causal relationship between any of the statutorily protected actions and the two instances in which Plaintiff alleges he should have been promoted and was passed over due to race.

Second, the court also need not consider whether the public write ups qualified as an adverse employment action because that claim too fails on the causal relationship prong, as discussed further below.

Third, and unlike the other two purported adverse employment actions, Plaintiff has produced sufficient evidence to present the hours reduction theory to a jury. Plaintiff has submitted evidence that could be interpreted to show his overall hours were reduced, at least for a period of time. Because Plaintiff is paid by the hour, reduced hours translates to reduced pay. Reduced hours can be an adverse employment action for discrimination purposes for the reasons discussed above. For retaliation purposes, the employment action need *not* have negatively affected take-home pay. Because it could have in this case, it stands to reason that a reasonable jury could find reduced hours to be an adverse employment action in that it could dissuade a reasonable worker from taking a protected action.

Defendant has argued that a purported adverse employment action cannot be such where Plaintiff did, in fact, engage in statutorily protected activity after the action occurred.  (Doc. # 63 at 17–18.)  As the court noted in its Memorandum Opinion and Order on Defendant's Motion to Dismiss (Doc. # 36 at 19), "[t]he fact that [Plaintiff] filed a Complaint does not preclude him from establishing that there was an adverse action."  *See also Lewis v. Michaels Stores, Inc.*, No. 305-CV-1323-J-33MMH, 2007 WL 3333498, at *6 (M.D. Fla. Nov. 7, 2007) (reasoning that "[i]f Defendant's argument were effective, no retaliation claim filed by a plaintiff in federal court could survive").

### c.  Causal Relationship

To satisfy the causal relationship prong of a prima facie case of retaliation, a plaintiff must set forth evidence that the "desire to retaliate" against the protected expression was the "but-for cause" of the adverse action.  *Nassar*, 133 S. Ct. at 2528.  Causation may be shown by a close temporal proximity between the protected activity and the retaliatory employment action.  *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007).  Where there is no additional causation evidence, this temporal proximity must be "very close."  *Id.*

### i.  Failure to Promote

While a failure to promote an employee in retaliation for engaging in a statutorily protected activity could potentially qualify as an adverse employment action for retaliation purposes, Plaintiff's claim as to this particular action fails for lack of temporal proximity.  The occasions upon which Plaintiff alleges he was passed over for promotions due to his race were too distant in time from any of his three potential instances of statutorily protected conduct.

The failure to promote claims in this case are based on the May 2012 promotion of Tidwell and the October 2012 promotion of Wade, both to the Assistant Store Manager position. Both of these promotions took place before the December 2012 EEOC charge and long after both the March 2011 shoving incident and the September 2011 EEOC charge. The statutorily protected activities are too distant in time from the promotions of Tidwell and Wade to support the "causal relationship" prong of a retaliation claim, in the absence of other evidence linking statutorily protected activity with Defendant's failure to promote Plaintiff to assistant store manager. *See Thomas*, 506 F.3d at 1364 (causal relationship may be established by causal proximity, but must be "very close" without additional evidence, and if there is a "substantial delay" of at least three to four months, "the complaint of retaliation fails as a matter of law"). The closest temporal relationship here is approximately eight months—the time between the September 2011 EEOC charge and the May 2012 promotion of Tidwell. Because Plaintiff has not presented additional evidence of a causal relationship between statutorily protected activities and the promotions of Tidwell and Wade, this substantial time delay is fatal to the retaliation claim as to failure to promote. Therefore, the Motion for Summary Judgment as to this claim is due to be GRANTED.

### ii.    Write Ups

Plaintiff also alleges that Corbett left write ups out in the view of other employees "in an effort to shame or embarrass him after he made complaints to management about her." (Doc. # 59 at 34.) The sole evidence cited for this is the Kenyatta Meadows Affidavit, which states generally that Meadows witnessed a stack of write ups "left on the counter for everyone to see." (Doc. # 59-19 at 1 ¶ 5.) The affidavit does not mention a specific date, nor does it mention the

identity of the person who left the write ups out.  Elsewhere, Plaintiff submitted a "Corrective

Action Review Form" (Doc. # 59-12), dated July 9, 2011, under Davila's name, but in Corbett's

handwriting.  (Doc. # 59-4 at 12:2–9.)  Plaintiff does not expressly allege that this particular

document was part of the stack left out to embarrass him.  Even if it was, July 2011 is too remote

in time from the shoving incident (March 2011) to imply causation, and preceded both EEOC

charges.  Without more, particularly without any evidence of the timing of the public write ups,

Plaintiff has not produced sufficient evidence to demonstrate a disputed fact issue on this aspect

of his retaliation claim.  The evidence submitted does not create a genuine issue of fact as to the

causal relationship between the public write ups and any of Plaintiff's statutorily protected

activity.  Therefore, the Motion for Summary Judgment as to this claim is due to be GRANTED.

### iii.    Hours Reduction

As to Plaintiff's argument that Corbett systematically reduced his hours after he reported

the shoving incident to Harris in March of 2011, he has produced sufficient evidence to establish

a prima facie case on the causal relationship prong, as on the protected activity and adverse

employment action prongs discussed above.  Plaintiff contends that in the immediate aftermath

of the shoving incident and his complaints to management, Corbett scheduled him for fewer

hours compared to the period preceding the incident.[18]  In support of his argument, Plaintiff cites

his Exhibit 21 (Doc. # 59-21), a chart entitled "Summary of Weekly Hours Worked – January 5,

2010 – August 20/2012."  The weeks of March 20, 2011 through August 21, 2011 are set apart in

one column.  The pushing incident occurred in March of 2011.  Plaintiff argues that the chart

illustrates retaliatory reductions in his typical hours scheduled because in the period set off in the

---

[18] Corbett testified at her deposition that she prepared the work schedule.  (Doc. #59-4 at 19:11–16.)

chart, he averaged 35.45 hours per week instead of the 38 hours or more he previously averaged.[19]  Defendant argues that Plaintiff's grouping of weeks is "completely arbitrary" and that the chart does not support Plaintiff's claims because Plaintiff worked an average of more than 38 hours per week across the entire time period represented on the chart.  (Doc. # 63 at 12.)

As discussed in reference to the related disparate treatment claim, Plaintiff's evidentiary submissions are sufficient to support a prima facie case of retaliation including disputed issues of fact as to whether Corbett began scheduling him for fewer hours because he complained to Harris following the shoving incident.  Plaintiff and Defendant substantially agree on the data presented in Plaintiff's spreadsheet,[20] but they interpret it differently.  Construing the evidence in the light most favorable to Plaintiff, he may in fact have been scheduled for fewer overall hours until Shakerin and others intervened to ensure Plaintiff was being scheduled properly.  Shakerin testified that she spoke with Plaintiff, Davila, and Linson about the scheduling issue, and that she "ended up having a call with [Plaintiff] and with his district manager so that everybody was level set in terms of [Plaintiff] is to be scheduled between 38 and 40 hours because he is a full-time employee."  (Doc. # 59-7 at 14:1–12.)  The evidence permits a reasonable jury to infer that Plaintiff was scheduled for fewer overall hours for a period of time following the shoving incident and his resulting complaints, and that the reduction in hours would not have occurred in the absence of the complaint to Harris.  The proximity in time of the overall downward trend in hours to the shoving incident is sufficiently close to establish a prima facie retaliation case.

---

[19] Plaintiff also argues in support of his claim that he was scheduled less than part time employees when he was a full time employee.  For purposes of its analysis the court will only consider how the Plaintiff's hours were scheduled before and after the shoving incident, as that is the most useful comparison in determining whether a factfinder could infer retaliation for Plaintiff's complaint to Harris.

[20] For instance, Plaintiff calculates that he worked an average of 35.45 hours per week during the period in the column set off and bolded (Doc. # 59 at 34), and Defendant substantially agrees, stating Plaintiff worked an average of 35.44 hours per week during the same period. (Doc. # 63 at 12.)

### d. Defendant's Legitimate Nondiscriminatory Reason for its Actions and Plaintiff's Rebuttal

Plaintiff's prima facie case on the hours reduction retaliation claim does not end the analysis for summary judgment purposes. Defendant may nonetheless be entitled to summary judgment if it offers a legitimate reason for the hours reduction and Plaintiff does not rebut that reason. For the reasons to be discussed below, the court concludes both that Defendant has presented such a reason and that Plaintiff has produced evidence to refute it.

Specifically, Defendant asserts that Plaintiff's hours were reduced because he asked for time off to attend classes. (Doc. # 56 at 7–8.) This qualifies as a legitimate reason for the reduction in Plaintiff's hours. Plaintiff, for his part, has maintained in his deposition and his affidavit that he never asked for time off for this reason. (Doc. # 59-1 at 153:12–20; Doc. # 59-27 at 1 ¶ 2.) This evidence is sufficient to create a genuine issue of material fact as to whether Defendant's stated reason is pretextual. Therefore, summary judgment as to Plaintiff's hours reduction retaliation claim is due to be DENIED.

## VI. CONCLUSION

For the reasons discussed,

1. Defendant's request to strike, contained in Doc. # 63, is GRANTED in part and DENIED in part as stated in this Order.

2. The Motion for Summary Judgment (Doc. # 56) is GRANTED as to the following claims:

   a. Disparate Treatment Race Discrimination: failure to promote, write ups of Plaintiff, disparate discipline of other drivers after accidents, and failure to train;

      b.   Racially Hostile Work Environment Discrimination; and

      c.   Retaliation: failure to promote and write ups of Plaintiff.

3.   The Motion for Summary Judgment (Doc. # 56) is DENIED as to Plaintiff's hours reduction claims of both Disparate Treatment Race Discrimination and Retaliation under Title VII and § 1981.

4.   The case will proceed on the Title VII and § 1981 Disparate Treatment Race Discrimination (hours reduction) claim and the Title VII and § 1981 Retaliation (hours reduction) claim, for the period March 20, 2011 through August 21, 2011.

DONE this 29th day of December, 2014.

                       /s/ W. Harold Albritton
                       W. HAROLD ALBRITTON
                       SENIOR UNITED STATES DISTRICT JUDGE